## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Heather H., <br><br> Plaintiff <br><br> v. <br><br> Andrew M. Saul, <br><br> Defendant. | REPORT AND RECOMMENDATION <br><br><br> 2:16-CV-01056-JNP-CMR <br><br> District Judge Jill Parrish <br><br> Magistrate Judge Cecilia M. Romero |

Plaintiff Heather H. filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security (Commissioner) denying her claims for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act). Having carefully considered the parties' memoranda, the complete record in this matter, and arguments at the hearing on November 22, 2019, the undersigned recommends the court AFFIRM the ALJ's decision.

### I. STANDARD OF REVIEW

The scope of the court's review of the Commissioner's final decision is narrow. "On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). Under this deferential standard, this court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

## II. BACKGROUND

Plaintiff applied for benefits in April 2009, alleging disability beginning November 1, 2007, due to depression and anxiety (Certified Administrative Transcript (Tr.) 17, 140-44, 166). She had past relevant work as an administrative clerk, service clerk, and service parts driver (Tr. 191-93, 559, 560).

An ALJ issued a decision in October 2015 finding that Plaintiff was not disabled (Tr. 10-33). The five-step sequential evaluation for assessing disability directed the ALJ to consider: 1) whether the claimant is currently working; 2) if the claimant has a severe impairment; 3) if the impairment(s) meet or medically equal an impairment listed in Appendix 1; 4) if the impairment(s) prevent the claimant from doing past relevant work; and 5) if the impairment(s) prevent the claimant from doing any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4).[1]

Here, at step two of his determination, the ALJ found that Plaintiff had the following severe impairments: obesity, generalized anxiety disorder, and major depressive disorder (Tr. 16). The ALJ found that Plaintiff's alleged back pain and migraines were not medically determinable impairments (Tr. 16). The ALJ further found that Plaintiff's impairments did not meet or equal the severity of a listed impairment (Tr. 16-19). The ALJ then found that Plaintiff retained the residual functional capacity (RFC) to perform light work with additional limitations, including simple and routine work; only occasional job contact with the public and with supervisors; and only stable work with few changes in routine (Tr. 19). Considering this RFC,

---

[1] Code of Federal Regulations (C.F.R.) citations are to the 2015 edition, which was in effect at the time of the ALJ's October 2015 decision. Part 404 contains the regulations governing DIB claims, while Part 416 contains parallel regulations governing SSI claims. Because these regulations parallel each other, the court provides citations to only Part 404.

2

the ALJ found – consistent with a vocational expert's testimony – that Plaintiff was unable to perform her past relevant work but could perform other jobs existing in significant numbers in the national economy (Tr. 24-25).  The ALJ thus concluded that Plaintiff had failed to establish disability under the strict standards of the Act (Tr. 26).  The Appeals Council then denied Plaintiff's request for review (Tr. 1-6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  See 20 C.F.R. §§ 404.981, 422.210(a).  This appeal followed.

### III. DISCUSSION

On appeal, Plaintiff alleges the ALJ erred as a matter of law by failing to find that her migraines were a severe impairment at step two of the sequential evaluation,[2] that the ALJ erred in finding Plaintiff did not meet the 12.04 and 12.06 Listings, and by discounting her treating doctors' opinions (ECF No. 19, Plaintiff's Brief (Pl. Br.) 9-18).  The Court will address each of the alleged errors in turn.

#### A. The ALJ Did Not Err at Step Two.

At step two, the ALJ evaluated Plaintiff's migraine headaches and reasonably determined that they were not a medically determinable impairment (Tr. 16).  For an impairment to be classified as medically determinable, it must be established by medical evidence consisting of signs, symptoms, and laboratory findings.  See Williamson v. Barnhart, 350 F.3d 1097, 1099 (10th Cir. 2003) (an impairment giving rise to disability benefits must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques).  A claimant's complaints or testimony, standing

---

[2] During oral argument, Plaintiff conceded she was not contesting her back pain was a severe impairment.  Therefore, any claim made by Plaintiff regarding her back pain is denied.

alone, cannot be the basis for finding a medically determinable impairment. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992) (claimant's statements, alone, are not enough to establish an impairment).

In reaching this conclusion, the ALJ appropriately relied on several factors, including (1) the fact that Plaintiff's treatment notes failed to document the presence of migraine headaches; (2) while Plaintiff's psychologist diagnosed migraine headaches, he was not an acceptable medical source for purposes of diagnosing a physical impairment; and (3) there was no other evidence in the record of migraine headaches (Tr. 16). Also supportive of the ALJ's finding was Plaintiff's admission that she had not been prescribed medication to treat migraines, had not seen a neurologist or had imaging studies, and that she took only over-the-counter medication with "some improvement of her symptoms" (Tr. 763). *See Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (claimant's assertions about her alleged migraines were undercut by the fact that none of her treating physicians diagnosed migraine headaches or prescribed medication for migraines).

Based on this evidence, the ALJ reasonably concluded that Plaintiff's migraines were not a medically determinable impairment. While Plaintiff takes issue with this conclusion, she does not cite to any evidence undermining the ALJ's conclusion other than doctors' opinions which the ALJ appropriately discounted (Pl. Br. 11-12). Thus, Plaintiff has failed to meet her burden to establish that her migraines were a medically determinable impairment, and the ALJ's finding must stand. *See Williamson*, 350 F.3d at 1100 (at step two, the claimant bears the burden).

### B. The ALJ Did Not Err at Step Three.

The listings at 20 C.F.R. part 404, subpart P, appendix 1, cover medical conditions so debilitating that they warrant an automatic presumption of disability without further consideration of the claimant's RFC or ability to perform past or other work. *See Sullivan v.*

4

*Zebley*, 493 U.S. 521, 534 (1990). In order to establish that she meets a listing, a claimant must "meet *all* of the specified medical criteria" for the listing. *Id.* at 530; 20 C.F.R. § 404.1526(b)(2)-(3). In the present case, the ALJ reasonably found Plaintiff did not meet listing 12.04 (Affective Disorders) or 12.06 (Anxiety Related Disorders).[3]

The required severity for listing 12.04 is met when the requirements in both the "A" and "B" criteria are satisfied or when the requirements of the "C" criteria are satisfied. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. Listing 12.06 requires meeting both the "A" and "B" criteria or the "A" and "C" criteria. *Id*. at § 12.06.[4] Plaintiff appears to assert that she met the "A" and "B" criteria of listing 12.04 (Pl. Br. 16-17).[5] However, as the ALJ properly found, Plaintiff did not satisfy the "B" criteria of either listing 12.04 or 12.06 (Tr. 17-18).

To satisfy such criteria, Plaintiff's mental impairment must result in marked limitations in at least two out of four broad functional areas. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06 (part B). The ALJ found, however, that Plaintiff did not have marked limitations in any area. The ALJ found that Plaintiff had: (1) no restriction in her activities of daily living; (2) mild difficulties in social functioning; (3) moderate difficulties in concentration, persistence, or pace; and (4) no episodes of decompensation that were of extended duration (Tr. 17-18). And the ALJ cited specific evidence in support of his conclusions, such as Plaintiff's ability to care for herself and her mother; ability to spend time with family members and maintain relationships; and evidence that she was able to pay attention to tasks and follow instructions (Tr. 17-18). While

---

[3] During oral argument, Plaintiff conceded that she was not contesting that she met listing 11.00 (regarding neurological disorders). Any claim made by Plaintiff regarding listing 11.00 is denied.
[4] The "B" criteria are the same for both listings. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06.
[5] Plaintiff does not specifically address the "C" criteria for listing 12.04 or the "A" or "C" criteria for listing 12.06 (Pl. Br. 16-17).

Plaintiff takes issue with these findings, she does not dispute the evidence relied on by the ALJ or present additional evidence, other than the conclusory opinions of Drs. Lambert and Jorgensen (Pl. Br. 16-17). However, the ALJ reasonably determined that these opinions were entitled to little weight, as discussed below.

Further, Dr. Park, a reviewing psychologist with expertise in the Social Security listings, specifically found that Plaintiff's impairments did not meet the "B" or "C" criteria of the mental health listings, including listing 12.04 and 12.06 (Tr. 708-20). Therefore, the record contains abundant support for the ALJ's finding that Plaintiff's impairments were not severe enough to satisfy a mental health listing such as listing 12.04 or 12.06.

Also related to the "B" criteria, Plaintiff further complains that the ALJ did not include a limitation on concentration, persistence, or pace in the RFC assessment to correspond to his findings at step three (Pl. Br. 15). Plaintiff, however, is incorrect that the ALJ was required to include his findings from step three in the RFC assessment; the ALJ's decision specifically recognized that his step three findings were "not an [RFC] assessment but . . . used to rate the severity of mental impairments" (Tr. 19). *See Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (unpublished) ("[W]e conclude that the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case.").

Further, the ALJ limited Plaintiff to simple or unskilled work that was stable with few changes in routine (Tr. 19; *see* Tr. 25 (relying on unskilled jobs)). These restrictions adequately accounted for all of Plaintiff's limitations. Unskilled work does not require the ability to set realistic goals or make plans independently of others. *See Jaramillo v. Colvin*, 576 F. App'x 870, 875 (10th Cir. 2014) (unpublished) ("[T]he basic mental demands of competitive,

6

remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." (quoting SSR 85–15, 1985 WL 56857, at *4)).  Similarly, "concentration is not critical" for unskilled work.  POMS DI 25020.010(B)(3).  Finally, the Tenth Circuit has held that moderate limitations in concentration, persistence, and pace—including a limitation on the ability to complete a normal workday and workweek—can be accommodated by a limitation to unskilled work.  *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015).  Thus, the ALJ fully accounted for Plaintiff's mental impairments, including her moderate limitations in concentration, persistence, or pace by limiting her to unskilled work that was also stable with few changes in routine (Tr. 19).  Plaintiff has not demonstrated that any additional limitations were warranted or supported by the record as a whole.

### C. The ALJ Not Err in Rejecting Plaintiff's Treating Doctors' Opinions in the RFC Determination.

Plaintiff complains that the ALJ should have given more weight to Dr. Lambert and Dr. Jorgensen's opinions because they both had a longstanding treatment relationship with her (Pl Br. 8-9).  Plaintiff also takes issue with the ALJ's treatment of Dr. Nelson and Dr. Barrett's opinions (Pl. Br. 8-9).  However, an ALJ is not required to give controlling or greater weight to the opinion of a treating source where, as here, that opinion is inconsistent with other substantial evidence in the record.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) ("[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record" (quotation and citation omitted)).  Plaintiff's arguments to the contrary merely request that the

court reweigh the evidence in a light more favorable to her, which it may not do. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2017) (on substantial evidence review, the court does not re-weigh the evidence or substitute its judgment for that of the Commissioner).

**1. Dr. Lambert**

In March 2015, Dr. Lambert opined that Plaintiff would not be limited in certain areas of mental functioning, but would be precluded for 15% or more of an eight-hour workday in many other areas, including her ability to maintain sufficient attention and concentration, complete tasks without extra supervision or assistance, respond appropriately to changes in a routine work setting, and deal with normal work stress (Tr. 785-88). The ALJ considered this opinion and concluded that it was only entitled to little weight (Tr. 23). The ALJ found that Dr. Lambert's extreme limitations were not supported by his treatment notes or the record as a whole (Tr. 23). Plaintiff's mental status examinations were generally normal or unremarkable, with little more than a depressed mood (Tr. 683, 684, 686, 705, 789). And Dr. Lambert did not document the same types of extreme limitations in his treatment notes that he assigns in his opinion (*id.*). The ALJ permissibly discounted his opinion on this basis. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Further, as the ALJ noted, Plaintiff testified that she only saw Dr. Lambert every six months, and that from 2011 to 2015, he merely prescribed prescriptions "over the phone" (Tr. 21; *see* Tr. 215-16). Plaintiff's failure to seek treatment, and Dr. Lambert's failure to recommend additional, more aggressive treatment, also undermines his restrictive opinion. *See Branum v. Barnhart*, 385 F.3d 1268, 1275-76 (10th Cir. 2004) (court upheld ALJ's rejection of treating physician's

8

opinion, in part, because only treatment provided was medical prescriptions). Thus, Plaintiff's arguments fail because the ALJ provided several well-supported reasons for giving less weight to Dr. Lambert's opinion.

### 2. Dr. Jorgenson

Dr. Jorgensen completed several opinions at Plaintiff's request in February 2011. First, he stated that he had counseled her for "over fifteen years" and that she was diagnosed with major depression and generalized anxiety (Tr. 745). He also opined that Plaintiff would have moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; frequent deficiencies of concentration, persistence, or pace; and repeated episodes of decompensation (Tr. 748). Finally, he generally opined that Plaintiff would be precluded from working while she was experiencing a headache; that she was incapable of low stress jobs; and that she was likely to be absent from work about twice a month (Tr. 749-52).

The ALJ considered these opinions and concluded that they were entitled to "little to partial" weight (Tr. 23). The ALJ noted that Dr. Jorgensen's statements to the effect that Plaintiff would not "be able to maintain full time employment" were opinions on an issue reserved to the Commissioner (Tr. 23). Such opinions are never entitled to any special significance or weight. *See* SSR 96-5p, 1996 WL 374183, at *2 ("treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance").

Next, the ALJ determined that the "marked" limitations in social functioning and other significant limitations Dr. Jorgensen assigned were not supported by his treatment notes or "any other credible evidence in the record" (Tr. 23). Consistent with the ALJ's finding, there are very few treatment notes from Dr. Jorgensen in the record and, while they are difficult to decipher,

they do not appear to document any of the extreme limitations he assigned (Tr. 753-56). For example, his limited notes from 2006 and 2007 primarily discuss Plaintiff's ability to exercise or walk for 30 minutes per day and her search for work (Tr.754-56). Further, while Dr. Jorgensen found that Plaintiff had "marked" limitations in social functioning, the ALJ discussed evidence inconsistent with this finding, including Plaintiff's ability to care for her mother, spend time with family members, and have a 20-year relationship (Tr. 17-18). The ALJ also noted Plaintiff's statement that she did not have any problems getting along with family, friends, neighbors, or authority figures and that she had never been fired or laid off from a job due to problems getting along with others (Tr. 18; *see* Tr. 577-79). Additionally, while Dr. Jorgensen opined that Plaintiff experienced "repeated episodes of decompensation," the ALJ found no evidence that she had ever experienced any episodes of decompensation that had been of extended duration (Tr. 18; *see* Tr. 748). Thus, the ALJ reasonably discounted Dr. Jorgensen's opinions because they were inconsistent with his own limited notes and with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider consistency).

### 3. Dr. Nelson

Plaintiff further argues that the ALJ improperly gave great weight to the opinion of examining physician Dr. Nelson (Pl. Br. 13-14). Dr. Nelson examined Plaintiff in 2015; at that time, her physical examination was entirely normal (Tr. 765-66). Dr. Nelson found no physical limitations and "no evidence of debilitating migraines that would limit [Plaintiff's] ability to work related to this condition" (Tr. 767). By separate form, Dr. Nelson generally opined that Plaintiff could lift and/or carry up to 20 pounds frequently; sit for four hours; and stand and walk for two hours each in an eight-hour workday (Tr. 768-69). The ALJ evaluated this opinion and reasonably concluded that it was entitled "considerable weight" because it was consistent with

Dr. Nelson's examination findings and the record as a whole (Tr. 23). However, the ALJ also determined that Plaintiff was "slightly more limited in her ability to lift and carry than opined by Dr. Nelson" (Tr. 23). And generally consistent with this opinion, the ALJ found that Plaintiff retained the RFC to perform light work with additional limitations (Tr. 19). The ALJ did not err in tempering Dr. Nelson's findings. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit").

### 4. Dr. Barnett

Plaintiff takes issue with the opinion from examining psychologist Dr. Barnett, referring to a conflict between "15F" and "16F" and complaining that a January 2015 date stamp makes the document "very suspect" (Pl. Br. 10). Plaintiff intended to refer to 16F and 17F, which are the documents at issue. In any event, the court agrees with Defendant that the January 2015 date stamp on the document appears to indicate the date the form was faxed to Dr. Barnett (ECF No. 21, Defendant's Response Brief (D. Br.) at 21). The date stamp does not have any impact on the soundness of Dr. Barnett's opinion and does not raise any concerns of reliability.

Plaintiff further argues that it would be "rare" for the examiner to complete such an opinion, and that "check box" forms should not be given any weight (Pl. Br. 10-11). Plaintiff has not cited to any testimony or legal authority to prove either claim. While check-the-box forms may be suspect when they are not accompanied by a detailed examination or clinical findings, here, Dr. Barnett completed such an examination and then relied on the results of her examination to complete the form. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (check-the-box style evaluation forms, unaccompanied by thorough written reports or persuasive

11

testimony, are not substantial evidence). Therefore, Plaintiff has failed to provide any cogent reason why the ALJ was not allowed to rely on Dr. Barnett's examination and her resulting opinion.

Moreover, as the ALJ actually found that Plaintiff was more limited than indicated by Dr. Barnett, Plaintiff has also not demonstrated that she suffered any prejudice as a result of the weight given to this opinion. *See Chapo*, 682 F.3d at 1288 ("if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit").

Therefore, the court finds that the ALJ's decision is supported by substantial evidence in the record, and the court declines Plaintiff's invitation to reweigh the evidence.

## RECOMMENDATION

Based on the foregoing, the undersigned finds the ALJ's decision is supported by substantial evidence and the correct legal standards were applied. Thus, the undersigned recommends the Commissioner's decision be AFFIRMED.

## NOTICE

Copies of this Report and Recommendation are being mailed to all parties who are hereby notified of their right to object. The parties must file any objection to this Report and Recommendation within fourteen (14) days of service. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 20 December 2019.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah